## NORTHERN CENT. RY. CO. v. HERCHISKEL.

(Circuit Court of Appeals, Second Circuit. May 12, 1896.)

1. RAILROAD COMPANIES—REGULATION OF SPEED—EVIDENCE.

The city of E., pursuant to legislative authority "to regulate the speed of locomotives and other cars in said city," passed an ordinance providing that "no railroad company * * * shall * * * suffer any engine * *. * or train of cars to be driven * * * in said city at a greater rate of speed than 15 miles per hour in any case, nor at a greater speed than 4 miles per hour unless a competent flagman shall be stationed at every intersection of such railway with any street in said city, at which such a flagman shall be required * * * by the common council. * * * " Held, that such ordinance could not be so construed as to restrict its operation to situations where the question of speed could be of importance to travelers on the streets at grade crossings, and that it was properly admitted in evidence in an action against a railroad company by the administratrix of a man run over by a train at a point between crossings, as bearing upon the question whether the train was running at an immoderate speed.

2. CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

One H., an employé of a railroad company, was engaged with another workman in repairing a water pipe at a point between two tracks in the company's yard. The men were bailing water out of a hole dug to reach the pipe; H., standing on the edge of the hole, lifting up and emptying the pails of water. While in this position, a switch engine approached on one of the tracks. H. stepped to the opposite side of the hole, and stood near the other track, continuing his work. While he stood there a train came up on the latter track, without warning by bell or otherwise, struck H., and inflicted injuries from which he died. There was evidence that H. had looked up the track a few minutes before, and that the train was not then in sight. Held, that the question whether H. was guilty of contributory negligence was properly left to the jury, in an action by his administratrix against the railroad company.

In Error to the Circuit Court of the United States for the Northern District of New York.

This case comes here on writ of error by the Northern Central Railway Company, which was defendant below, to review a judgment of the circuit court, Northern district of New York. The judgment was entered in favor of defendant in error, who was plaintiff below, upon a verdict for $3,500. The action was brought by an administratrix, under the state statute, to recover damages for causing the death of her intestate through negligence of the defendant. The deceased, at the time of his death, was an employé of the New York, Lake Erie & Western Railroad, and, about 10 a. m. on the day of the accident, was at work as a trackman at a point 2,472 feet north of the Erie Depot, and within the limits of the city of Elmira, and of that company's yards. At this point there were two main tracks of the Erie Railroad, known as the east and the west bound, the distance between them being 8.7 feet. By an agreement with the Erie, the defendant railway ran its trains through the city of Elmira over these tracks. The place where the accident happened is 172 feet north of Washington avenue overhead crossing, and the first grade crossing north of Washington avenue is distant 3,900 feet therefrom. The track was straight, and one could see from the place of the accident clear down to the depot. The deceased was working with a fellow employé at a hole which had been dug between the two Erie main tracks for the purpose of repairing a water pipe. This hole was about 8 feet long, 4 feet wide, and 5 feet deep. The two men were engaged in bailing water from the hole; deceased standing on the edge, and taking the pails of water as they were handed up to him by his companion. A switch engine of the defendant company had backed down, from a siding leading to a blast furnace on the west side of the track, onto the east-bound track, and was proceeding slowly westward on this east-bound track. As this engine approached him, deceased lifted his pail which was on that track out of the way of said engine, and stepped towards the west-bound track, and was seen standing between the hole and the west-bound track, stooping down for another pail of water, with his back towards the east. While the switch engine was proceeding westwardly on the east-bound track, a passenger train of the defendant railway followed on the west-bound track, overtaking and passing the switch engine at very near the place of the accident. As this passenger train passed the hole, the deceased was struck by its bumper, thrown some distance, and received injuries from which he died. It is practically undisputed that the train which struck deceased was running at a speed of 20 to 25 miles an hour. There is a conflict of evidence as to whether or not it gave any warning of its approach, by bell or otherwise, and as to whether or not it was usual to give such warning; the engineer testifying, "When we come along where men are working, we always ring." The finding of the jury has settled those questions. It must be assumed upon this appeal that no signal or warning was given to the men at work alongside of the track ahead, although they must have been in plain view of the engineer, and that deceased was entitled to expect that an approaching engine would ring a bell. He was not hard of hearing; "could hear distinctly," as one witness expresses it.

Geo. M. Diden, for plaintiff in error.

H. J. Sadler, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). Three assignments of error only are pressed upon the attention of this court:

1. It is contended that the trial court erred in admitting in evidence an ordinance of the city of Elmira relating to the speed of trains. Upon this branch of the case the court charged as follows:

"The question for you to determine is whether or not, under all the circumstances of the case, in view of the situation, there being no street crossings, it was proper to run at such speed [20 miles an hour]. In these circumstances,

the ordinances of the city of Elmira were admitted in evidence, not as pre-
cluding you from answering the question one way or the other, but for what
they may be worth. Should you find that the train was running at an im-
moderate rate of speed, still, if the accident would have occurred the same
if the train had run at a moderate speed, then the question of speed is im-
material."

No objection was taken to this part of the charge, and it is a cor-
rect statement of the law, if the ordinance applies to trains run-
ning where this one was. Beisegel v. Railroad Co., 14 Abb. Prac.
(N. S.) 29. Plaintiff in error, however, contends that the ordinance
in question does not apply to such trains. By chapter 535 of the
Laws of New York of 1884, the common council of the city of El-
mira was authorized to regulate, restrain, or prevent the unneces-
sary obstruction of streets by locomotives and other cars, and to
regulate the speed of locomotives and other cars in said city. In
pursuance of such authority, the common council duly passed the
ordinance which it is conceded was in force in the city of Elmira
at the time of the accident. It reads as follows:

"No railroad company or any person shall direct, cause, or suffer any engine,
railroad car, or train of cars to be driven, drawn, run or propelled upon any
railway in said city at a greater rate of speed than fifteen miles per hour in
any case, nor at a greater speed than four miles per hour unless a competent
flagman shall be stationed at every intersection of such railway with any
street in said city, at which such a flagman shall be required to be stationed
by the said common council at such times as shall be so required, under a
penalty of fifty dollars for each offence."

Plaintiff in error insists that this ordinance should be so con-
strued by the court as to restrain its operation within narrower
limits than its words import, on the theory that the literal mean-
ing of its language would extend to cases which the common coun-
cil never designed to include in it, and that it should be confined
to situations where the question of speed could be of importance
to travelers upon such of the streets of the city of Elmira as are
intersected by railways at grade crossings. The difficulty with
this contention is that the language of the ordinance is in no sense
doubtful, obscure, or ambiguous, and, so far from indicating an
intent on the part of the common council to restrict its operation
as counsel suggests, it quite plainly indicates the converse. It
contains a provision requiring a very low rate of speed unless cer-
tain intersections with streets are protected in the manner indi-
cated, and also, irrespective of the fact that such intersections
may be thus fully protected, expressly prohibits a greater rate of
speed than 15 miles an hour "upon any railway in said city in any
case." To alter this ordinance in the way contended for would
be legislation, not construction. The case mainly relied on by
plaintiff in error (Green v. Canal Co., 38 Hun, 55) is not in point.
There the court found sufficient evidence that the Binghamton or-
dinance was not intended to apply to trains making connections
within a railroad yard, in the fact that by its terms it was re-
stricted to engines and cars "while passing through said city."

2. It is further assigned as error that the court refused to grant
defendant's motion to direct a verdict for the defendant on the

ground that plaintiff was guilty of contributory negligence. We are entirely satisfied that, upon the proofs, it was a question properly to be decided by the jury whether or not the deceased was acting with reasonable prudence under all the circumstances.

3. It is further assigned as error that the court refused to charge that:

"There is no evidence in this case that deceased looked to ascertain whether any train was coming towards him on the west-bound track, and that is so even in case the defendant was guilty of any negligence in the care or control of the train."

One of the witnesses testified:

"About a minute and half before the accident, I saw him looking down the west-bound track towards the depot,—the direction from which the train came. The passenger train that struck him was not in sight at that time. He was looking in the direction from which the train came that struck him."

There was, in our opinion, no error in the refusal to charge as requested. The judgment of the circuit court is affirmed.